For your patience, ladies and gentlemen, we'll hear from the parties in Shapiro v. Goldman. Good morning, judges. May it please the court, my name is Raymond Zupa and I represent the plaintiff in this case. Some concessions will make this process more efficient, so excuse me if I read here because I want to be precise. We have the decision in Abbasi and to the extent that the government argued that the complaint alleged a Fourth Amendment malicious prosecution claim and I resisted arguing it could also entail a Fifth Amendment due process claim for purposes of Bivens, I was incorrect. I also agree with the government that Abbasi merits reconsiderations of certain Bivens causes of action in this matter. The plaintiff hereby drops from consideration any alleged constitutional violations as they pertain to the First, Fifth, Eighth, and of course the Fourteenth Amendment as to the Bivens claims. This is despite the fact that none of the motions to dismiss nor the court's decision made any mention of the special factor analysis as such has never been briefed. Further, the following Bivens stylized claims are withdrawn from consideration on this appeal. Not the allegations contained therein, but the claims. The first claim for relief, deprivation of federal civil rights, is withdrawn. Fourth claim for relief, denial of a constitutional right to fair trial, that's withdrawn. The sixth claim for relief, conspiracy to violate plaintiff's civil rights, that is withdrawn. The eighth claim for relief, deliberate indifference to training, that is withdrawn. I'm sorry for having to do it here, but with the Abbasi case and reconsideration of the various issues, the decision was made late. The Abbasi decision came down, what is it, six weeks ago? You could have sent us a 28-J letter even within the last 24 hours. I'm not even sure I got everything that you were quickly articulating, but we'll listen to the tape. Go ahead. Why don't you tell us what's left and what you're looking to have us vacate the district court judgment on. Yes. With the Abbasi case, I just learned of it, so I'm sorry. I should have been looking for it. What's left is the third claim, as the Bivens claims are concerned, the third claim for relief, malicious prosecution. The fifth claim for relief, inducement of false testimony, and the seventh claim for relief, stigma plus. There is also the Federal Tort Claim Act abusive process, and there's also a request to amend the Federal Tort Claim Act malicious prosecution claim. So the three Bivens claims that are left are malicious prosecution, inducement of false testimony, and stigma plus. All the other Bivens claims are withdrawn? That is correct, Your Honor. Okay, go ahead. Okay. The second amended complaint pleads relevant facts in detail and abundance, relying in large part on evidence that's cited to, quoted, and sourced. Now, the pleading is somewhat sketchy when it comes to some of the legal components, but when you look at all four corners of the second amended complaint, which we must, as well as the pleadings to incorporation, we have a solid claim for malicious prosecution, violates the fourth amendment, is a traditional Bivens claim. As far as the nexus of this case, regarding Dr. But you didn't lose in the district court because the district court didn't think you could maintain it as a Bivens action. You lost because the pleadings weren't sufficient, the district court didn't think your pleadings were sufficient to state the claim. Tell us why you think the district court was wrong. We've pledged so many facts from so many sources, elicited at page five and six of the primary brief, to say, in brief, what we had was incantations of such as speculation, et cetera, et cetera, words, conclusory terms to describe the complaint is not plausible. The particular problems that were identified with respect to the FBI defendants, there was a concern about whether you pleaded their sufficient involvement in the initiation of the criminal proceeding. And with respect to the prosecutors, there was a concern as to whether you pled facts showing a lack of probable cause. Tell us why that shouldn't concern us. The FBI agents initiated this by hand in hand fabricating evidence. Taking innocuous evidence, fabricating it, and spinning it into inculpatory evidence. So when you're fabricating, when you're creating falsehoods. What's the basis for saying that they initiated the prosecution rather than the prosecutors? Just so I know what it is in the complaint that we're supposed to be focusing on. When you fabricate evidence, you initiate. And the case that supports that? They're in my brief, Your Honor. Well, you can tell us on rebuttal then. It's just that we don't have to hunt for it. Okay. I am curious, picking up on your own description of your complaint, as to why we should not affirm the dismissal simply on the grounds of its violation of Rule 8, which requires a short, plain statement of the grounds for the court's jurisdiction, and a short, plain statement showing that the pleader is entitled to relief. This complaint was a horrendous, gigantic mess. And while the district court did not rely on that in all respects, why isn't that a sufficient basis for us to affirm the dismissal of the complaint? It reeks of miserable draftsmanship. I'm sorry? The complaint reeks of miserable draftsmanship, and I understand that. That may be an understatement, but miserable draftsmanship is not necessarily a basis to dismiss the complaint. But that thing in a 115-page monstrosity, which the judge warned you about and gave you two opportunities to replead, saying, please comply with Rule 8, and the complaint never got any shorter or simpler or more comprehensible. Why should a court have to wrestle with a complaint like that when the rule explicitly says that you've got to do otherwise? The complaint pled an awful lot of facts, because there were an awful lot of facts. And with the heightened standard now, this tombly, equable standard, which seems to have been used to actually go beyond what's necessary to plead fraud, it was a fear that we wouldn't get enough facts in. So there was a lot of facts, and a lot of facts were pled. It was a complex case. I think it's not so much the size, it's perhaps the organization of the complaint. And I think when I talked about legal components, I think that's where it gets a little sketchy. But nevertheless, I think it's a monumental task to read it, but it's definitely clear enough. We know what happened here with factual detail. So the draftsmanship, it may be miserable, but that's not necessarily ---- I don't think that's grounds for dismissal of a man's claim, especially a man who's been subjected to what Dr. Shapiro's been subjected to. In that case, we should have been ordered to amend and stringently ordered to get it right this last time. You were. You were ordered to amend and get it right and comply with Rule 8 twice. And things were cut, and things were added, defendants were added. Again, this complaint was a product of an ongoing investigation. And the more we found, the more things had to be added, and some things subtracted, and it came out too long. But I still think it's clear enough to understand. It's certainly not something that you'd want to repeat again, but it's definitely clear enough, and I think the district judge knew what was going on as evidenced by the decision. Let me take you back to your pleading on the FBI agents. You alleged that they gathered what they knew to be false information. That's a conclusion. What facts were alleged to support that, because that wasn't clear to me? We go through everything from the NICB's clear view analysis, how it was incorporated into agent affidavits in support of search warrant applications. You have to give facts after Iqbal to support a conclusion that they gathered what they knew to be false information. They're conducting an investigation, and they're obtaining information that turns out not to be correct. It's not evidence that suggests they gathered what they knew to be false information. Is there anything in the pleading that you can point us to? There's a number of things I can point to. Well, just point us to it right now. There is the labeling of MRI reports as knowingly fraudulent, and labeling of Dr. Shapiro's involvement in a conspiracy. These are not false allegations. These are characterizations, and there's case law that says that that's not enough. Mischaracterization of evidence as inculpatory is not a fabrication of evidence. The district court said that, and I don't think you've shown to us that there's any law to the contrary. All right, thank you. I know you want to reserve time for rebuttal. Let's hear from your adversaries. Good morning, and may it please the Court, Andrew Krauss for the government defendants. Dr. Shapiro has not adequately alleged any constitutional violation by any of the six individual federal defendants or any tort claim against the United States. The district court's dismissal of Shapiro's claims, whichever claims remain at this point as to the government defendants, should be affirmed. Just to turn briefly to some of the issues that were just addressed, with respect to the FBI agents, they absolutely did not initiate the prosecution of Dr. Shapiro. Their actions, whatever actions there were as discussed in the complaint, were taken alongside the prosecutors. There was never an allegation that they took some step and then passed the information along to the prosecutors or in any way importuned them to act. So are you basically agreeing that whatever defect there may have been with the prosecution, that that falls with the prosecutor defendants? That's where you want us to focus for that? Yes, Your Honor. Okay. We don't believe there was any defect with the prosecution. And on that, if I understood your brief correctly, your argument is that the plaintiff has failed to show lack of probable cause? Yes, as well as the both absolute and qualified immunities that apply to the conduct of the prosecutors. And as for the supervisor defendants, defendants Barara and Fedarchik, there's simply a lack of allegation of their personal involvement in any of the alleged violations. Mr. Zupa referred to fabrication of evidence. We also submit, as discussed in our papers, that there is no plausible allegation that any evidence was fabricated in connection with this case. And your position on his argument just made now that their treatment of the MRI reports and how they characterize them, what's your view on why that doesn't qualify as false evidence? It's certainly not manufactured evidence, Your Honor. As Your Honor indicated, it's characterization of evidence. And, in fact, many of the points that are actually specifically addressed from the wiretap applications, for example, are recitations of fact. There's not even really a discussion of characterization quoting from those wiretap applications in the complaint. All right. Thank you. Did you ever move for sanctions before, Judge Etkin? Did I move for sanctions? No, the government. The government did not move for sanctions at all, either here or below, before the district court. Thank you. Thank you, Your Honor. May it please the Court. My name is Michael Nelson. I'm with the law firm of Evershed Southerland, and I'll be addressing the arguments for the private defendants. I represent Nancy Pierce, who is an executive of the Government Employees Insurance Company. She and three other board members of NICB are named as defendants in this case, as well as NICB and an agent of NICB, Mr. Dardello. The claims that plaintiffs alleged, if they're not successful against the federal government, they're certainly not successful against the private defendants. I'm a little confused as to what claims remain against the private defendants in light of what counsel said earlier, but from the standpoint of where we are, of those claims, there were four claims that were brought pursuant to Bivens, and then there was one claim of conspiracy that hinged on Bivens-type claims. That's what's alleged against the private defendants. What's alleged against these board members really is nothing more than the board members . . . NICB as an organization did what it's supposed to do. It brought information to governmental agencies, and the governmental agencies are the ones that decided to seek the criminal prosecution. NICB may have provided the information, but it wasn't improper information that was provided, and the characterization that it was improper is just that, characterization and does not survive the pleading standards. With that, I'll just end the argument by asking the court to affirm the judgment of the district court and that it be affirmed and all claims against the private defendants be dismissed with prejudice. Thank you. Thank you. Good morning, Your Honors. My name is Barry Jacobs, and I represent the NICB, Tordello, Ms. Hood, Mr. Manges, and Mr. Brody. My comments to the court will be limited to asking this court to consider the imposition of sanctions against the plaintiffs for bringing what we consider to be a frivolous appeal. Responding to Judge Lora's question earlier, we did not move for sanctions before the district court because we felt that everybody's entitled to their day in court. Based upon the strong decision of Judge Buchwald and the district court and the clear import of the law and the fact that plaintiff's appeal just ignores the law and ignores everything that happened before we got to this point, we believe that the FRAP 38 and 28, 1927 and this court's inherent power to impose sanctions justifies this court taking a serious look at that and imposing sanctions upon the plaintiff and asking them to demonstrate and show cause why costs and damages should not be imposed upon them for bringing what we believe to be a . . . You're asking for sanctions against counsel, appellate counsel? Yes. Appellate counsel and plaintiff, jointly and severally. If somebody retains an attorney to bring an appeal, the attorney is liable to sanctions if the appeal has no meritorious points? I think as an attorney and an officer of the court, it's incumbent upon the attorney to make a determination as to whether or not there is any merit to the appeal and if he . . . You mean factual, a factual basis? When you say merit, you mean if there's any factual . . . Factual basis and a legal basis for making the arguments. The facts of this case, when plugged into the law, demonstrate that there was no merit to the case. Judge Buchwald determined that. Nonetheless, we're here with the lengthy appendix, lengthy briefs, a lot of time and money spent by my client and the other private defendants to defend what we believe to be a frivolous appeal. The case should have stopped with the district court's decision. Thank you. Thank you. Mr. Zuppa. As to the question regarding initiation of the criminal proceeding, I'm relying on Stooks v. City of New York, which actually addresses that issue in detail. And it says the police officer may be found to have initiated a criminal proceeding by knowingly creating false information that created the basis for the prosecution. I'd also rely on . . . An unpublished district court opinion, right, that you're pointing us to? It's 215, I got it, 215 U.S. District, Lexus 33. Right. It's an unpublished district court opinion. Yes. Do you have anything that is a controlling opinion or a circuit opinion that says . . . I also cite to the Second Circuit in Manginello v. City of New York, 612 F3D 149, and Guzman v. City, that's another unpublished decision. Would you address the sanctions issue? Yes, I will, and I'll incorporate that in what I was going to say anyway. In this case, when you have the FBI agents and the NICB working together in what's called mischaracterization, but that mischaracterization is then put into a sworn statement, okay, and testified to in front of a judge, that becomes fabrication. At what point do we draw the line? So here we have a strong factual basis for bringing this appeal. This man was indicted. The indictment was totally unclear as to what he did wrong. The way we had to look at and try and find out what he did wrong was through a lured press release. Two years, they begged the government. They begged them, tell us what we did wrong. We can hear you. We can hear you. Okay, I'm sorry. Tell us what we did wrong, please, for two years. Two years, they refused to give us a theory. That's a cover-up of the fact that they had nothing in front of that grand jury. Two years, we begged. Finally, they say inflated reads. They're supposed to provide the films that evidence this. They promised that they're going to provide the films that evidence these inflated reads. They provide six films. None of them were inflated when compared to the reports. In fact, when the U.S. attorney walked in and looked at the reports, they found 35% of the reports showed positive findings. Okay, that is the same amount that you would find in asymptomatic people, people that did not have car accidents, 35% bulging discs or herniated discs, just naturally. This man was ruined, totally ruined for two years. And between the lured press releases, which is still up, the lured remarks, and then you go to the articles written about him. It talks about, well, he owns this property, this rich doctor owns this property out on Long Island, and yet he's engaged in insurance fraud. He couldn't practice and no fault. He couldn't practice in workers' comp, and insurances wouldn't accept him. And in this case, they said that he was a fraudulent owner. When, in fact, the bills, the very bills show. We're not trying the case. You were asked about if you wanted to respond to the request. That's a motion for you personally to be sanctioned. But your time is up. I think we have the parties' positions. We're going to take the matter under advisement. Thank you very much. Thank you.